UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| JACQUELYNN NICKLER,<br><br>                      Plaintiff,<br>     v.<br>CLARK COUNTY, *et al.*,<br><br>                     Defendants. | Case No. 2:18-cv-01668-JCM-VCF<br><br>ORDER |

Presently before the court is defendant Steven Grierson's ("Grierson") motion to dismiss plaintiff's first complaint. (ECF No. 7). Plaintiff Jacquelynn Nickler ("plaintiff") filed a response. (ECF No. 10). Grierson did not reply and the time to do so has passed.

Also before the court is defendants Clark County and Kathleen Lambermont's ("Lambermont") motion to dismiss plaintiff's amended complaint. (ECF No. 18). Plaintiff filed a response (ECF No. 24), to which Clark County and Lambermont replied. (ECF No. 34).

Also before the court is Grierson's motion to dismiss plaintiff's amended complaint. (ECF No. 19). Plaintiff filed a response (ECF No. 25), to which Grierson replied. (ECF No. 28).

**I.  Facts**

This is a sexual discrimination and retaliation case brought under Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act of 1990 ("ADA"), and various state law claims. Plaintiff brings these claims against Clark County, Grierson, and Lambermont (collectively "defendants").

The instant action stems from a statement plaintiff made in the workplace. Plaintiff works as a district attorney team clerk with the Clark County district attorney's ("CCDA")

1

office. (ECF No. 9 at 3). In December 2012, plaintiff stated, "no wonder shit like Friday happens." *Id.* Plaintiff alleges she made the statement in reference to a coworker leaving early on Friday, December 14, 2012, due to an overwhelming workload caused by a change in calendaring procedures. *Id.*

However, defendants construed the statement to be related to the Sandy Hook Elementary School shooting in Connecticut, which had also happened on Friday, December 14, 2012. (ECF No. 9 at 4). Because of her statement, plaintiff was questioned about her mental health and medications she may have been taking. *Id.* Plaintiff was told she needed a "filter." *Id.* Defendants labeled plaintiff as having low "emotional intelligence." *Id.*

Plaintiff was accordingly suspended from her job for several weeks pending an investigation. *Id.* The investigation included assessing various violence and gun-related cartoons, photos, posters, and printed items that plaintiff had posted in her work area. *Id.* Plaintiff alleges that Clark County discriminated against her because it scrutinized the gun references in her cubicle more severely than it scrutinized her similarly situated male co-workers. (ECF No. 9 at 4).

When plaintiff returned to her job, she was required to undergo a mental "fitness for duty" examination by a psychologist of defendants' choosing. *Id.* Until she was cleared as "fit for duty," plaintiff's employee identification badge was restricted. *Id.* This meant plaintiff could only access her workplace by going through the public entrance, including the security screening that all non-employee members of the public are subject to. *Id.* With plaintiff's limited access, she could not enter the Regional Justice Center ("RJC") early and work overtime. *Id.*

In January 2013, the psychologist cleared plaintiff in the fitness for duty exam. *Id.* Plaintiff shared limited results of the exam with defendants but would not share the detailed report. *Id.* Based on plaintiff's failure to provide the report in its entirety, defendants refused to restore plaintiff's badging privileges. (ECF No. 9 at 5).

Plaintiff further alleges that Grierson, as the RJC court executive officer, and Lambermont, as an administrator for the CCDA office, provided false information to decision makers, including the chief judge of the Eighth Judicial District Court. (ECF No. 9 at 13). This

2

led to plaintiff's badge authorization being withheld for four years. *Id.* According to plaintiff, Grierson and Lambermont knew that plaintiff posed no threat; rather, they simply disliked plaintiff and intended to prevent her from working overtime. *Id.*

On August 31, 2017, nearly five years after the incident, plaintiff filed a formal charge of discrimination and retaliation against the CCDA's office with the U.S. Equal Employment Opportunity Commission ("EEOC"). (ECF No. 9 at 7). On September 12, 2017, plaintiff also filed a formal charge of discrimination and retaliation against the Clark County Court Administration office with the EEOC. *Id.*

Plaintiff filed her amended complaint on November 15, 2018, bringing the following causes of action: (1) sex discrimination or retaliation in violation of Title VII, Civil Rights Act of 1964; (2) discrimination in violation of the ADA; (3) intentional interference with prospective economic advantage ("IIPEA"); and (4) civil conspiracy. (ECF No. 9).

## II. Legal Standard

A court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A properly pled complaint must provide "[a] short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While Rule 8 does not require detailed factual allegations, it demands "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

"Factual allegations must be enough to rise above the speculative level." *Twombly*, 550 U.S. at 555. Thus, to survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. 662, 678 (citation omitted).

In *Iqbal*, the Supreme Court clarified the two-step approach district courts are to apply when considering motions to dismiss. First, the court must accept as true all well-pled factual allegations in the complaint; however, legal conclusions are not entitled to the assumption of truth. *Id.* at 678–79. Mere recitals of the elements of a cause of action, supported only by

conclusory statements, do not suffice. *Id.* at 678.

Second, the court must consider whether the factual allegations in the complaint allege a plausible claim for relief. *Id.* at 679. A claim is facially plausible when plaintiff's complaint alleges facts that allow the court to draw a reasonable inference that defendant is liable for the alleged misconduct. *Id.* at 678.

Where the complaint does not permit the court to infer more than the mere possibility of misconduct, the complaint has "alleged—but not shown—that the pleader is entitled to relief." *Id.* (internal quotation marks omitted). When the allegations in a complaint have not crossed the line from conceivable to plausible, plaintiff's claim must be dismissed. *Twombly*, 550 U.S. at 570.

The Ninth Circuit addressed post-*Iqbal* pleading standards in *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). The *Starr* court stated, in relevant part:

> First, to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively. Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.

*Id.*

### III. Discussion

As a preliminary matter, the court will dismiss without prejudice defendant Grierson's motion to dismiss plaintiff's first complaint (ECF No. 7) in light of plaintiff's amended complaint (ECF No. 9).

Defendants argue that the court should dismiss plaintiff's claims because they are time barred. (ECF Nos. 18, 19). The court will first address plaintiff's federal discrimination claims and state tort claims in turn.

*A. Federal discrimination claims*

For this court to have subject matter jurisdiction over plaintiff's Title VII claims, plaintiff must have exhausted her "administrative remedies by filing a timely charge with the EEOC." *Vasquez v. County of Los Angeles*, 349 F.3d 634, 644 (9th Cir. 2003). Indeed, under Title VII, a

plaintiff seeking relief must file a charge with the EEOC within 180 days after the alleged unlawful employment practice occurred. 42 U.S.C. § 2000e-5(e)(1); *Surrell v. Cal. Water Serv.*, 518 F.3d 1097, 1104 (9th Cir. 2008).

However, if a plaintiff first institutes proceedings with a state or local agency with authority to grant or seek relief from such practice, the period of limitations for filing a charge with the EEOC is extended to 300 days. 42 U.S.C. § 2000e-5(e)(1). "Charging parties have the benefit of the 300-day time limit for filing their federal claims even when they have missed the state's filing deadline for submitting those claims to the state deferral agency." *See Laquaglia v. Rio Hotel & Casino, Inc.*, 186 F.3d 1172, 1175 (9th Cir. 1999).

Title VII's filing requirement applies to claims under the ADA as well. 42 U.S.C. § 12117(a). "[T]he limitations period under Title VII operates as a statute of limitations . . ." *Draper v. Coeur Rochester*, 147 F.3d 1104, 1107 (9th Cir. 1998). Accordingly, failure to file a charge with the EEOC within the prescribed time period bars subsequent action in federal court. *Delaware State College v. Ricks,* 449 U.S. 250, 256 (1980).

Nevada Equal Rights Commission ("NERC") is a state agency with authority for purposes of Title VII and ADA claims. *See Laquaglia,* 186 F.3d at 1174. Section 233.160(1)(b) of the Nevada Revised Statutes mandates than an aggrieved individual must file a complaint with the NERC within 180 days of the alleged unlawful employment practice. Regardless, the extended 300-day federal filing period is available so long as the individual files a charge with NERC within 240 days of the incident, thus allowing for the 60-day deferral period. *Laquaglia,* 186 F.3d at 1174; *EEOC v. Commercial Office Products Co.,* 486 U.S. 107, 123–24 (1988).

Here, plaintiff did not meet the 180-day requirement. Plaintiff's badging privileges were revoked in December 2012 and remained revoked until November 30, 2016. (ECF No. 9 at 6). Plaintiff did not file her charge of discrimination with the EEOC until August 31, 2017, nearly five years after the alleged unlawful employment practice began and nine months after the resolution of the alleged practice. (ECF No. 9 at 7).

Plaintiff believes she is entitled to the 300-day limit because she timely filed her discrimination charge with NERC. (ECF No. 24 at 19). However, plaintiff fails to allege any

5

facts in support of her conclusion. *See generally* (ECF No. 9). Namely, plaintiff fails to identify when she initiated proceedings with NERC such that her charge would be timely. *See generally* (ECF No. 9). Although the court must treat all of plaintiff's allegations as true when ruling on a motion to dismiss, the court cannot accept plaintiff's conclusion that her filing was "timely" without specific alleged facts. *Iqbal*, 556 U.S. at 678–79. Therefore, the court finds that the pleadings show that plaintiff's discrimination claims against Clark County are time barred. The court dismisses claims (1) sex discrimination or retaliation and (2) discrimination in violation of the ADA.

    B. *State tort claims*

Defendants also argue that the statutes of limitations bar plaintiff's state law claims against Grierson and Lambermont. The court will address plaintiff's IIPEA claim and civil conspiracy claim in turn.

        *a. IIPEA*

A claim for IIPEA is subject to a four-year statute of limitations. Nev. Rev. Stat. 11.190(2)(c); *In re Amerco Derivative Litigation*, 252 P.3d 681, 703 (Nev. 2011); *Orr v. Bank of America,* 285 F.3d 764, 781 (9th Cir. 2002). A cause of action accrues on tort claims "when the wrong occurs and a party sustains injuries for which relief could be sought." *Petersen v. Bruen*, 792 P.2d 18, 20 (Nev. 1990). Under the discovery rule, "the statutory period of limitations is tolled until the injured party discovers or reasonably should have discovered facts supporting a cause of action." *Id.*

Determining whether plaintiff "in the exercise of reasonable diligence should have known of the facts constituting the elements of [her] cause of action is a question of fact for the trier of fact." *Siragusa v. Brown*, 971 P.2d 801, 806 (Nev. 1998). "Only where uncontroverted evidence proves that the plaintiff discovered or should have discovered the facts giving rise to the claim should such a determination be made as a matter of law." *Id.* at 812.

Here, the parties do not dispute that plaintiff learned about the facts supporting her claims in December 2012, when defendants revoked her badging privileges. *See* (ECF No. 9 at 4). Nor do the parties dispute that plaintiff did not file her complaint until August 31, 2018, nearly six

years later. (ECF No. 1). Therefore, when the statute of limitations began to run is not a question of fact, but a question of law. Without a tolling exception, the four-year statute of limitations bars plaintiff's IIPEA claim.

Plaintiff contends, however, that under the continuing violation doctrine, the limitations period for her IIPEA claim was tolled until November 30, 2016, the last day her badging privileges were denied. (ECF Nos. 24, 25). The Nevada Supreme Court has not addressed whether the continuing violation doctrine applies to a claim for IIPEA. "Where the state's highest court has not decided an issue, the task of the federal courts is to predict how the state high court would resolve it." *Giles v. Gen. Motors Acceptance Corp.*, 494 F.3d 865, 872 (9th Cir. 2007) (quotation omitted). Accordingly, the court will now predict whether the Nevada Supreme could would recognize the continuing violation doctrine for IIPEA claims.

The State of Nevada does not have any mandatory case law pertaining to the continuing violation doctrine. Indeed, the Nevada Supreme Court has regularly avoided addressing the issue, even when litigants before the tribunal have invoked the doctrine. *See*, *e.g.*, *McCormick v. Bisbee*, 401 P.3d 1146 (Nev. 2017) (declining to address the continuing violation doctrine because plaintiff did not allege a plausible claim); *see also*, *e.g.*, *State v. Wyeth*, 373 P.3d 964 (Nev. 2011) (declining to address the continuing violation doctrine due to an insufficient record).

The Nevada Supreme Court has effectively rendered the continuing violation doctrine inapplicable to state torts by consistently declining to create authority pertaining to the doctrine. Therefore, if the Nevada Supreme Court were confronted with the facts of this case, it would likely decline to apply the continuing violation doctrine to IIPEA claims.

The court also notes that even if the Nevada Supreme Court were to apply the continuing violation doctrine to IIPEA claims, the statute of limitations would still bar plaintiff's claim because the alleged facts in this case do not amount to a continuing violation. The court provides its analysis of the continuing violation doctrine consistent with California law as California courts have adequately developed the doctrine and applied it to intentional torts. *See Pugliese v. Superior Court,* 53 Cal. Rptr. 3d 681, 686 (Cal. Ct. App. 2007) (applying the continuing violation doctrine to domestic battery).

7

The continuing violation doctrine aggregates a series of wrongs or injuries for purposes of the statute of limitations. *Aryeh v. Canon Bus. Sols., Inc.*, 292 P.3d 871, 875–76 (Cal. 2013). Thus, where a tort involves a "continuing wrong," the statute of limitations does not run until the date of the last injury or when the tortious acts cease. *Pugliese*, 53 Cal. Rptr. 3d at 686.

However, a "mere continuing impact from past violations is not actionable." *Knox v. Davis*, 260 F.3d 1009, 1013 (9th Cir. 2001) (holding that plaintiff's cause of action accrued upon the "permanent and complete" determination of her suspension rather than any ongoing injury that her suspension caused). Instead, the court's focus is upon the time of the acts, "not upon the time at which the consequences of the acts became most painful." *Abramson v. University of Hawaii,* 594 F.2d 202, 209 (9th Cir. 1979).

Here, plaintiff does not allege that either Lambermont or Grierson acted in a way to interfere with her prospective economic advantage after December 2012. *See generally* (ECF No. 9). Plaintiff merely concludes that, "for purposes of both the statutory and the tort claims set forth herein, the [d]efendants' actions constituted continuing violations . . ." (ECF No. 9 at 6). Although the court accepts factual allegations in the complaint as true, the court cannot accept plaintiff's labels and conclusions. *Iqbal*, 556 U.S. at 678–79.

It is true that plaintiff suffered a continuing impact from defendants' actions in December 2012. Once her badging privileges were revoked, she was forced to use the RJC public entrance. This meant plaintiff was subject to daily security screening and could not enter the building early to work overtime. However, plaintiff's "mere continuing impact" from the defendants' decision to revoke her privileges is not actionable. *Knox*, 260 F.3d at 1013. Indeed, the court must look at the time the act was committed, not the accrual of consequences. *Abramson*, 594 F.2d at 209. Therefore, the continuing violation doctrine would not extend the applicable limitations period.

Accordingly, because plaintiff did not bring her claim within the four-year limit, the statute of limitations bars her IIPEA claim.

    b. *Civil conspiracy*

Defendants also argue that plaintiff's civil conspiracy claim fails for the same reason, as civil conspiracy must be premised on an intentional tort. (ECF Nos. 18, 19). Plaintiff, on the

other hand, argues that the statute of limitations for civil conspiracy is not controlled by the underlying tort. (ECF Nos. 24, 25).

In Nevada, the statute of limitations for a civil conspiracy is four years. Nev. Rev. Stat. 11.220; *Siragusa v. Brown*, 971 P.2d 801, 806 (Nev. 1998). "[A]n action for civil conspiracy accrues when the plaintiff discovers or should have discovered all of the necessary facts constituting a conspiracy claim." *Id.* at 807.

Civil conspiracy is a derivative tort. *Sahara Gaming Corp. v. Culinary Workers Union Local 226*, 984 P.2d 164, 168 (Nev. 1999) (finding that because the underlying defamation claim failed in summary judgment, the derivative civil conspiracy claim also fails). This means there is no independent claim of civil conspiracy; rather, "conspiracy must be based on an intentional tort." *Slaughter v. State*, No. A-16-740003-C, 2017 Nev. Dist. LEXIS 2118, at *6 (Nev. 2017) (citing *Dow Chemical Co. v. Mahlum*, 970 P.3d 98, 111–12 (Nev. 1988)).

Here, plaintiff's underlying tort, IIPEA, is time barred; there is no actionable tort on which plaintiff can bring her civil conspiracy claim. Therefore, her civil conspiracy claim must also be dismissed. *See Jackson v. Las Vegas Review-Journal*, No. A-17-749900-C, 2017 Nev. Dist. LEXIS 866, at *9 (Dist. Ct. Nev. 2017) ("[B]ecause [plaintiff's] civil conspiracy claim is derivative of defamation and false light claims that must be dismissed due being time-barred by the statute of limitations, the civil conspiracy claim must also be dismissed.").

The court finds each of plaintiff's claims, as pleaded, are time barred.

**C. Conclusion**

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that defendant Grierson's motion to dismiss (ECF No. 7) be, and the same hereby is, DENIED without prejudice.

IT IS FURTHER ORDERED that defendants Clark County and Lambermont's motion to dismiss (ECF No. 18) be, and the same hereby is, GRANTED.

IT IS FURTHER ORDERED that defendant Grierson's motion to dismiss (ECF No. 19) be, and the same hereby is, GRANTED.

/ / /

IT IS FURTHER ORDERED that plaintiff's first amended complaint (ECF No. 9) be, and the same hereby is, DISMISSED without prejudice.

DATED THIS 15th day of April 2019.

_____
JAMES C. MAHAN
UNITED STATES DISTRICT JUDGE